UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

IQBAL SINGH and IMS, P.C.,

                                        Plaintiffs,

        v.                                              1:09-cv-500

RUSSELL G. WELLS, JAMES SHERMAN,
JOHN PARIS, JAMES KARDAS, COLONEL
BERNARD THOMAS, COLONEL RANDALL
INOUYE, LIEUTENANT COLONEL RALPH
GRAVES, CHRISTINA CORREALE, PATRICIA
HUBER, COLONEL ROBERT BROWN, AND
SHERRI ANDERSON-HUDGINS,

                                        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

        Plaintiffs Iqbal Singh ("Singh") and IMS, P.C. ("IMS") commenced the instant action

against Defendants asserting claims under the Fifth Amendment and pursuant to 42 U.S.C.

1981, Title VI of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000d), and the New York

Human Rights Law.  Presently before the Court is Defendants' motion to dismiss pursuant to

Fed. R. Civ. P. 12 on the ground that the instant action is time barred.

**I.      FACTS**

        The Complaint alleges the following facts which, for purposes of the instant motion,

are assumed to be true.

        Plaintiff Iqbal Singh ("Singh") is the president of Plaintiff IMS, P.C. ("IMS").  IMS had

three contracts with the United States Government.  In sum, the Complaint alleges that

Defendants "expressly procure[d] the termination of" Plaintiffs' government contracts and "prevented the award of more work. . . based upon the racial and ethnic origin of Mr. Singh and the employees of IMS, or the perceived alienage of Mr. Singh and the employees of IMS." The specifics are as follows.

In April 1990, IMS was selected by the Army Corps of Engineers (the "Corps"), Huntsville Division, to provide certain work under Contract No. DACA87-92-C-0004 ("Contract 0004"). This was a fixed price contract. In September 1992, IMS was selected to perform work on Contract No. DACA31-92-0046 ("Contract 0046"). This was an "Indefinite Quantity/Indefinite Delivery" contract (hereinafter "ID/IQ"). It had a one year term with options for four additional years. The contract had a guaranteed minimum of $100,000 and a maximum of $3,000,000. From 1992 until 1994, the Corps regularly issued task orders to IMS under Contract 0046. The total amount of work given to IMS under Contract 0046 was $646,414.00. During this period, IMS's work was rated to be "excellent." At some point in time, the contracts were transferred from the Corps's Huntsville Division to the Baltimore Division.

In early to mid 1994, several meetings were held between personnel employed by the Watervliet Arsenal and Corps employees concerning Contract 0004. After these meetings, it was determined that Contract 0004 would be removed from IMS and given to a firm known as Malcolm Pirnie. In August 1994, Defendant Russell Wells, Director of Public Works at the Watervliet Arsenal, wrote a letter to the Corps requesting the termination of Contract 0004. According to a hand-written memo dated August 31, 1994, Defendant James Sherman claimed that IMS "employs non-U.S. citizens that must be escorted at WVA & they do not have the manpower to do this extra effort. . ." IMS was not permitted to proceed with

the work under Contract 0004.  IMS also did not receive any further task orders under

Contract 0046.  In October 1994, Defendant Colonel Robert Brown and Sherri Andersen

Hudgins prepared derogatory performance evaluation reports on two delivery orders

prepared by IMS.  According to Plaintiffs, these performance evaluations are false.

In February 1995, IMS inquired about doing certain additional work for the Corps.  It

was requested that certain environmental remediation work be given to IMS.  In February

1995, Defendant Brown refused to give the work to IMS.

In June 1995, IMS was awarded Contract DAC31-95-0057 ("Contract 0057").  This

was an ID/IQ contract that had a guaranteed minimum and a maximum.  Contract 0057 had

a one year term with an option for an additional year.  Although IMS did receive work orders

under this contract, the amount of work received was less than 10% of maximum allowable.

From 1994 to 1997, other contractors received work from the Baltimore District, but IMS "was

unable to get any substantial new task orders or contracts."

In or around 1997, Defendant Christina Correale, the Corp's Hazardous Waste

Chief, told an IMS employee that IMS should send a white person to solicit work from the

Corps, due to racial prejudice.

In May 2007, Plaintiffs commenced a breach of contract action against the United

States in the United States Court of Federal Claims.  In that complaint, Plaintiffs alleged that

"racial prejudice is believed to have played a role in the inability of IMS to get work" and that

the Corps engaged in "discriminatory practices."  In March 2010, after a trial, Plaintiffs' Court

of Federal Claims action was dismissed.

Plaintiffs commenced the instant action in April 2009 claiming that their contracts

were terminated and they were denied work on account of racial and ethnic discrimination.

Plaintiffs assert claims under the Fifth Amendment and pursuant to 42 U.S.C. 1981, Title VI of the Civil Rights Act of 1964 (42 U.S.C. sec. 2000d), and the New York Human Rights Law.

Presently before the Court is Defendants' motion to dismiss on the ground that Plaintiffs' claims are time-barred.

## II.      STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must take the factual allegations of the complaint to be true and draw all reasonable inferences in favor of the non-movant. Mortimer Off Shore Servs., Ltd. v. Federal Republic of Germany, — F.3d —, 2010 WL 2891069 (2d Cir. July 26, 2010).  "To survive a motion to dismiss, a complaint must plead 'enough facts to state a claim for relief that is plausible on its face.'"  Ruotolo v. City of New York, 514 F.3d 184, 188 (2d Cir. 2008) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Turkmen v. Ashcroft, 589 F.3d 542, 546 (2d Cir. 2009) (quoting Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S. Ct. 1937, 1949 (2009)).

## III.     DISCUSSION

Defendants move to dismiss on the ground that the instant action is barred by the applicable statute of limitations.  Defendants claim that Plaintiffs' claims accrued as early as 1994, or by 1997 at the latest - long before the filing of the instant action.  In support of their argument, Defendants point to paragraph 68 of the Amended Complaint wherein Plaintiffs allege that Singh is "a member of the Sikh ethnic/religious group" who has "darker skin and wears a religiously mandated turban" and is the person who generally met with Corps employees.  The Amended Complaint continues to state that "[i]n or around 1997, the Corp's

Hazardous Waste Chief, Christina Correale, told an IMS employee that IMS should send a white person to solicit work from the Corps, due to racial prejudice." Id. Defendants also point to a February 2, 1998 letter from the Department of the Army stating that "On 2 June 1997, the IMS President met with the Commanding General presenting certain facts to document discrimination within the USACE contract award procedures at the Huntsville U.S. Army Engineering and Support Center (CEHNC), Baltimore District (CENSA), and Omaha District (CENNO)."[1]  Finally, Defendants note that Plaintiffs' 2007 complaint filed in the Court of Federal Claims includes allegations of discrimination and prejudice.[2]

Plaintiffs respond that the applicable three year statute of limitations should commence from Plaintiffs' discovery of the discriminatory conduct.  According to Plaintiffs, they were "not in possession of any facts or evidence that would have allowed [them] to file a proper and meritorious civil rights complaint until 2008."  Pl. Mem. of Law at 15.  Plaintiffs contend that it was not until they received discovery in conjunction with the Court of Federal Claims case in 2008 and heard trial testimony in 2009 that they learned of sufficient facts to prepare a meaningful discrimination complaint.  Plaintiffs also argue that the continuing violation doctrine saves the present action from being time-barred.

---

[1] Because this letter is outside the pleadings, it will not be considered in connection with the pending motion to dismiss.

[2] The Court takes judicial notice of the Court of Federal Claims complaint and will consider that document in connection with the pending motion to dismiss because it is a matter of public record, see Staehr v. Hartford Financial Servs. Group, Inc., 547 F.3d 406, 426 (2d Cir. 2008) ("matters judicially noticed by the District Court are not considered matters outside the pleadings."); Staehr, at 425 ("it is proper to take judicial notice of . . . prior lawsuits. . . ."), the Amended Complaint in this case references the Court of Federal Claims proceedings, and Plaintiffs certainly were in possession of the complaint filed in the Court of Federal Claims and relied upon the Court of Federal Claims proceedings in bringing the instant suit.  See Mangiafico v. Blumenthal, 471 F.3d 391, 398 (2d Cir. 2006); Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002).  The Court does not use these documents to demonstrate the truth of the matters asserted in the Federal Court of Claims complaint, but, as will be seen, only to demonstrate Plaintiff's knowledge at a particular time.

A three year statute of limitations applies to Plaintiffs' federal-based claims.  See
Kronisch v. United States, 150 F.3d 112, 123 (2d Cir.1998) (Bivens claims); Tadros v.
Coleman, 898 F.2d 10, 12 (2d Cir. 1990) (§ 1981 claims); Morse v. Univ. of Vermont, 973
F.2d 122, 126 (2d Cir. 1992) (Title VI claims) .  "[A] claim accrues when the plaintiff knows or
has reason to know of the injury that is the basis of the action."  Morse, 973 F.2d at 125
(internal quotation and citation omitted).

> In analyzing the timing of accrual in the context of discrimination claims, the
> Supreme Court has instructed that "the proper focus is on the time of the
> discriminatory act, not the point at which the consequences of the act become
> painful." Chardon v. Fernandez, 454 U.S. 6, 8, 102 S. Ct. 28, 29, 70 L. Ed.2d 6
> (1981) (emphasis in original) (citing Delaware State College v. Ricks, 449 U.S. 250,
> 258, 101 S. Ct. 498, 504, 66 L. Ed.2d 431 (1980)). Thus, "the timeliness of a
> discrimination claim is measured from the date the claimant receives notice of the
> allegedly discriminatory decision." O'Malley v. GTE Serv. Corp., 758 F.2d 818, 820
> (2d Cir. 1985).

Morse, 973 F.2d at 125.  "The . . . time periods commence upon the . . . commission of the
discriminatory act and are not tolled or delayed pending the [plaintiff's] realization that the
conduct was discriminatory unless the [plaintiff] was actively misled by [the defendant], he
was prevented in some extraordinary way from exercising his rights, or he asserted his rights
in the wrong forum, in which event tolling of the time bar might be permitted as a matter of
fairness."  Miller v. Int'l Telephone and Telegraph Corp., 755 F.2d 20, 24 (2d Cir. 1985).

Here, Plaintiffs' injuries were felt in 1994 and 1997.  The Amended Complaint
alleges that the 0004 Contract was terminated in 1994.  See Am. Compl. at ¶¶ 33, 34, 38,
48, 49, 52, 53.  Plaintiffs knew about the termination at that time.  Id.  The Amended
Complaint further alleges that, upon termination of the 0004 Contract, IMS did not receive
any further task orders under the 0046 Contract.  Id. at ¶ 53.  It was also known to Plaintiffs
that other firms were awarded work that was "essentially the same as the . . . Contract 0004

scope of work." Id. at ¶ 48.  The Amended Complaint also states that Plaintiffs were refused work at the Seneca Army Depot in February 1995 . Id.at ¶ 62.  By 1997, Plaintiffs had knowledge concerning the discontinuance of any work under the 0057 Contract.  In any event, by its terms, the 0057 Contract necessarily terminated within two years - 1997.  Id. at ¶ 63.  The Amended Complaint also alleges that, in or around 1997, a Corps employee told an IMS employee to send a white person to solicit work from the Corps due to racial prejudice. Id. at para. 68.

Based on these facts, the Court finds that Plaintiffs received notice of any discriminatory decisions by 1997 at the latest and, under any circumstances, long before April 2006.[3]  While Plaintiffs may not have had specific evidence leading them to conclude that the contracts were terminated on account of discriminatory reasons, there was sufficient information available to them such that they knew, or reasonably should have known, the basis for the instant action.  This information includes the facts that Plaintiffs contracts were terminated, Plaintiffs did not receive additional work under the contracts while other firms did receive the same or similar work, the contracts were terminated despite IMS having received "excellent" ratings, Am. Compl. at ¶ 25, "IMS did not receive any credible explanation of why it has been deprived of the Work under Contract 0004," id. at ¶ 52, Defendants are claimed to have prepared false, derogatory performance evaluation reports in 1994, id. at ¶ 54, and a Corps employee told an IMS employee that they should send a white person due to racial prejudice, id. at ¶ 68.  Moreover, in the complaint filed in the Court of Federal Claims action in 2007,  Plaintiffs allege that "the Corps was discriminating against IMS from participating in

---

[3] April 2006 is three years before Plaintiffs' filed the Complaint in this case.

the Corps . . . program," Def.'s Ex. 2 at par. 60, and that "racial prejudice is believed to have played a role in the inability of IMS to get work." Id, at par. 64; see also id. at par. 68 ("as a result of the Corps' bad faith and discriminatory practices. . . ."). The fact that Plaintiffs alleged racial discrimination in the 2007 complaint, before it received any discovery in that action in 2008, strongly suggests that Plaintiffs believed, or had reason to believe, that the contracts were terminated on account of unlawful discrimination. As noted, "[t]he . . . time periods commence upon the . . . commission of the discriminatory act and are not tolled or delayed pending the [plaintiff's] realization that the conduct was discriminatory. . ." Miller, 755 F.2d at 24. Plaintiffs fail to allege sufficient facts suggesting that Defendants engaged in misleading conduct or otherwise prevented Plaintiffs from exercising their rights in some extraordinary way that prevented them from timely commencing this action. Accordingly, the Court finds that the instant matter is untimely and equitable tolling does not apply.

The Court further finds no basis for the application of the continuing violation doctrine. "There is . . . a 'continuing violation' exception to the normal knew-or-should-have-known accrual date of a discrimination claim when 'there is evidence of an ongoing discriminatory policy or practice . . . .'" Harris v. City of New York, 186 F.3d 243, 248 (2d Cir. 1999) (quoting Van Zant v. KLM Royal Dutch Airlines, 80 F.3d 708, 713 (2d Cir. 1996)). The continuing violation doctrine does not apply to discrete acts such as the terminations of the contracts. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113 122 S. Ct. 2061 (2002). While the refusal to give work to Plaintiffs during the existence of those contracts may have been ongoing, that period ended when the contract periods ended. The Amended Complaint does not identify any refusals to issue new contracts or other unlawful conduct that fall within the statute of limitations. The fact that Plaintiff continues to

feel the effect of Defendants' refusals to do work with them does not toll or otherwise extend the statute of limitations period. <u>Washington v. County of Rockland</u>, 373 F.3d 310, 318 (2d Cir. 2004); <u>Lightfoot v. Union Carbide Corp.</u>, 110 F.3d 898, 907-08 (2d Cir.1997); <u>Gallo v. Glen Cove City Sch. Dist.</u>, 2009 WL 1161818, at *6 (E.D.N.Y. 2009); <u>Malarkey v. Texaco, Inc.</u>, 559 F. Supp. 117, 121 (S.D.N.Y. 1982); <u>see</u> <u>also</u> <u>Deters v. City of Poughkeepsie</u>, 150 Fed. Appx. 10 (2d Cir. 2005) ("The mere fact that the effects of [discrimination] are continuing does not make the [discriminatory] act itself a continuing one.").

## IV.      CONCLUSION

For the foregoing reasons, the Court finds that Plaintiffs' claims are time-barred. Accordingly, Defendants' motion to dismiss is GRANTED and Plaintiffs' Complaint is DISMISSED IN ITS ENTIRETY.

IT IS SO ORDERED.

Dated:August 17, 2010

Thomas J. McAvoy
Senior, U.S. District Judge